Ross M. MADDEN, Regional Director of the Thirteenth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

STEEL, METALS, ALLOYS & HARDWARE FABRICATORS & WAREHOUSEMEN LOCAL 810, I.B.T., and Its Agent, Harry Rubi, and Warehouse and Mail Order Employees Union, Local 743, I.B.T., and Its Agent, Max Podolski, Respondents.

Civ. 63 C 1688.

United States District Court
N. D. Illinois, E. D.
Oct. 24, 1963.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Julius G. Serot, Asst. Gen. Counsel, William J. Cavers, Regional Atty., Region 13, and Allen P. Haas, Atty., N. L. R. B., Chicago, Ill., for petitioner.

Lester Asher, Melvin Rosenbloom, Asher, Gubbins & Segall, Chicago, Ill., for respondents.

Charles B. Mahin, Spray, Price, Townsend & Cushman, Chicago, Ill., for charging party.

WILL, District Judge.

This Court, having considered the pleadings of the parties, testimony given at a hearing held on October 8, 1963, and the arguments made and memoranda submitted by counsel, makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Petitioner, Regional Director for the Thirteenth Region of the National Labor Relations Board (hereinafter referred to as "the Board"), initiated this proceeding under the provisions of sec. 10(l) of the National Labor Relations Act (hereinafter referred to as "the Act"), 29 U.S.C. § 160(l).

2. Ideal Roller and Manufacturing Co., Inc. (hereinafter referred to as "Ideal"), the charging party in this action, is an Illinois corporation engaged at Chicago, Illinois, Long Island, New York, and other locations in the manufacture, sale and distribution of rubber rollers and molded rubber products.

3. Silver Star Storage, Inc. (hereinafter referred to as "Silver Star"), an Illinois corporation, operates two commercial warehouses in Chicago, Illinois, at which it furnishes warehousing and related services. Ideal is a customer of Silver Star at the latter's South Side location.

4. Respondent Steel, Metals, Alloys & Hardware Fabricators & Warehousemen Local 810, International Brotherhood of Teamsters (hereinafter referred to as "Local 810"), is a labor union with principal offices in New York City. Local 810 is currently on strike against Ideal's Long Island plant, at which it is bargaining agent for Ideal's employees. Respondent Harry Rubi is an agent of Local 810.

5. Respondent Warehouse and Mail Order Employees Union, Local 743, International Brotherhood of Teamsters (hereinafter referred to as "Local 743"), is a labor union with principal offices in Chicago, Illinois. Max Podolski is an agent of Local 743.

6. On or about June 12, 1963, Ideal filed a charge with the Board alleging that Local 810 and Local 743 and their agents Rubi and Podolski had been and were then engaged in a secondary boycott against Silver Star, allegedly an unfair labor practice within the meaning of sec. 8(b) (4) (i) and (ii) (B), of the Act, 29 U.S.C. § 158(b) (4) (i) and (ii) (B).

7. Pursuant to sec. 10(l) of the Act and upon a finding that there was reasonable cause to believe the unfair labor practice charge was true, the Board filed a petition in this Court seeking a temporary injunction pending final disposition of the matter.

8. Local 810 struck Ideal's Long Island plant on April 1, 1963, after failing to reach agreement on contract terms for the employees therein who had been represented by the union since January, 1963.

9. Following the commencement of the strike and picketing of Ideal's New York plant, Local 810 began in April to picket Ideal's Chicago plant. The employees of the Chicago plant have not participated in the picketing nor have any engaged in a strike against Ideal.

10. Silver Star, in the person of its president, Henry Wisniewski, solicited the business of Ideal beginning in January, 1963. Silver Star first performed services for Ideal on May 2, 1963.

11. Prior to its contract with Silver Star, Ideal shipped and received goods via truck at its plant, its own employees loading and unloading the trucks and handling the materials at docks on the Ideal premises. Following the start of

picketing at Ideal and the subsequent agreement between Ideal and Silver Star, shipments intended for Ideal were delivered by truck to Silver Star's warehouse, unloaded there, and placed in boxcars. When a full carload was assembled it was delivered to Ideal by rail. Shipments emanating from Ideal, rather than being placed on trucks at the Ideal plant, were loaded (fully labeled with the carrier designated) in boxcars and taken by rail to the Silver Star warehouse three miles away. At Silver Star, the shipments were divided among the pre-determined carriers, loaded on their trucks and dispatched.

12. The employees of Silver Star, when unloading trucks containing shipments inbound for Ideal and loading trucks with shipments outbound from Ideal, are performing services and activities previously performed by Ideal employees.

13. On or about May 10, 1963, at the Silver Star South Side warehouse, respondent Rubi sought to have Silver Star terminate its dealings with Ideal. His proposal was rejected by Wisniewski, and picketing of Silver Star began on May 16, 1963.

14. Respondent Rubi, in the company of respondent Podolski, on June 4, 1963, again came to the same warehouse. They spoke with Stanley Barszcz, the foreman, and told him that, unless Silver Star stopped handling Ideal merchandise, pickets would return to the warehouse.

15. On several other occasions from June 5, 1963, up to and including October 1 or 2, 1963, employees of various motor carriers, after conferences with pickets, refused to deliver to Silver Star materials consigned to Ideal or to pick up at Silver Star Ideal's shipments to its customers.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the matter here at issue. 29 U.S.C. § 160(l).

2. The Court's role in hearing the petition is not to determine whether or not there has been, in fact, a secondary boycott. The Court is limited to con-

sidering whether the petitioners have "reasonable cause" to believe that such an unfair labor practice is being engaged in by the respondents.

3. Silver Star's employees, when engaged in loading and unloading trucks which had been so serviced by Ideal's employees at the Ideal plant prior to the commencement of picketing at that plant, were engaged in the work Ideal's employees had performed previously, thereby making Silver Star an ally of Ideal.

4. The "ally doctrine" exception to the prohibition of secondary boycotts is not limited to situations where the primary employer is struck and employees of a secondary employer engage in the work previously performed by the strikers. A secondary employer is an "ally" and is engaged in "struck work" when it performs services or work previously performed by employees of a lawfully picketed plant even though such employees are not on strike but are prevented from performing such services or work by such lawful picketing.

## OPINION

Petitioner, proceeding under the provisions of § 10(l) of the National Labor Relations Act (hereinafter referred to as "the Act"), 28 U.S.C. § 160(l), seeks to enjoin respondents from further picketing at the premises of Silver Star Storage (hereinafter referred to as "Silver Star") pending a final determination by the National Labor Relations Board of a charge that the unions and their agents have engaged in a secondary boycott, an unfair labor practice within the meaning of § 8(b)(4)(i) and (ii)(B) of the Act, 29 U.S.C. § 158(b)(4)(i) and (ii)(B). The charging party, Ideal Roller and Manufacturing Co., Inc. (hereinafter referred to as "Ideal"), is an Illinois corporation operating plants in Chicago, Illinois, and Long Island, New York, as well as at other locations not here relevant. Respondent Local 810 is currently engaged in a strike against Ideal's Long Island plant, at which it is the certified bargaining representative for Ideal's employees. Neither respondent local repre-

638

sents the employees of Ideal's Chicago plant. These employees have not participated in the picketing of Ideal or Silver Star referred to herein nor have they engaged in a strike against Ideal.

If the employees of Ideal's Chicago plant were on strike, the challenged union activity at Silver Star would clearly fall within the "ally doctrine" and the request for an injunction denied on the basis of the Royal Typewriter case, N. L. R. B. v. Business Machine, etc., Local 459, 228 F. 2d 553 (2nd Cir., 1955), cert. denied, 351 U.S. 962, 76 S.Ct. 1025, 100 L.Ed. 1483 (1956), and Judge Rifkind's landmark opinion in Douds v. Metropolitan Fed'n of Architects, etc., Local 231, 75 F.Supp. 672 (S.D.N.Y.1948). The employees of Silver Star, when unloading trucks containing inbound shipments for Ideal and loading trucks with outbound shipments from Ideal, are performing services and activities previously performed by Ideal employees. Were the employees of the Ideal plant in Chicago on strike, Silver Star would fall within the standard definition of an "ally", a secondary employer who "knowingly does work which would otherwise be done by the striking employees of the primary employer." N. L. R. B. v. Business Machine, etc., Local 459, supra, 228 F.2d at 559.

The instant case is complicated by the fact that the employees at Ideal's Chicago plant are not on strike. The picketing which gives rise to this proceeding, however, is the direct result of a strike between Local 810, the union picketing Silver Star, and Ideal, the charging party herein, at the latter's Long Island plant. Local 810, as a result of its picketing activity at Ideal's Chicago plant and the hesitance of fellow-teamster truck drivers to cross its picket lines, effectively curtailed the flow of materials and finished products to and from that location. As a result of the picket lines, Ideal's own employees have not been able to perform their usual loading and unloading duties. This prompted Ideal to contract with Silver Star, the latter succeeding to the tasks which, at all times prior to the Long Island strike and the Chicago pick-

eting which was a by-product of that strike, had been the province of its own employees. Silver Star under its agreement with Ideal is doing "struck work", work transferred to it because the lawful picketing of Ideal's Chicago plant resulted in Ideal's own employees being unable to perform some of their customary duties.

■ The union's picketing of the Chicago plant is intended to increase the effectiveness of its strike in Long Island and is lawful. Ideal's relationship with Silver Star was designed to circumvent the situation created by the picketing. This alone is not sufficient to permit picketing of a secondary employer, but when the device utilized causes work previously done by employees of the picketed plant to be assigned to the secondary employer, the ally doctrine becomes applicable. As was said in the Royal Typewriter case, "Where an employer is attempting to avoid the economic impact of a strike by securing the services of others to do his work, the striking union obviously has a great interest, and we think a proper interest, in preventing those services from being rendered." Supra, 228 F.2d at 558.

If Ideal's Chicago dock employees were on strike and Silver Star was hired to do their work, it would be an ally. It is equally so when, as here, some of the customary activities of the dock employees are transferred to Silver Star to avoid the impact of Local 810's picketing. It was not the intent of Congress in passing the National Labor Relations Act to protect such a situation. In the words of one of its principal authors, Senator Taft, "The spirit of the Act is not intended to protect a man who * * * is cooperating with a primary employer and taking his work and doing the work which he is unable to do because of the strike." 95 Cong.Rec. 8709 (1949).

■ Petitioner and the charging party rely heavily on the Fein Can case, McLeod v. Local 810, etc., 182 F.Supp. 552 (E.D.N.Y.1960), aff'd 299 F.2d 636 (2nd Cir., 1962). The factual differences between the two cases are clear and highlight the basic principle involved. In

Fein, the alleged ally Advance Trucking Corporation did not engage in "struck work". The District Court found that "the evidence fails to disclose that Advance employees are doing any work formerly done by Fein employees or, indeed, that they are doing any more work or that their work is any different in kind." Supra, 182 F.Supp. at 555. In the instant case the facts show Silver Star employees doing work "farmed out" to it following the commencement of picketing at Ideal and formerly done by Ideal's employees.

The petition of the Board for a temporary injunction is denied and the cause dismissed.